Case number 23-3387, Estate of Isaiah Andrews v. City of Cleveland OH at all. Oral argument, 15 minutes for plaintiff, 15 minutes to be shared by defendants. Ms. Bonham for the appellant. Good morning. Good morning. I'd like to reserve four minutes for rebuttal if I could. Great. Thank you. May it please the court. My name is Elizabeth Bonham and I represent Isaiah Andrews. Isaiah was wrongfully imprisoned for 45 years for another man's murder of his wife because these Cleveland homicide detectives following Cleveland police policy violated the Brady rule. We're asking that the court rule that a jury can hear his claims. Now what I'd like to do is address the merits of the Brady claims and the state law breach of duty claim as well as the district court's erroneous conclusion that the estates of these homicide detectives are not susceptible of suit. But preliminarily, I would like to situate the facts of this case where they belong because we have been here before. Just a few years ago in Jackson v. City of Cleveland on similar facts, same police department, same era, just one year apart, same policies that were in place and same training regime. This court held that a jury could conclude that the City of Cleveland's policies and training caused and permitted Brady violations just like the one at issue here. The one thing that the Jackson case did not address was something that applies here and that's what happens when you have the deaths, well in this case, of the plaintiff and the defendants. So why, you know, Robertson says you can completely obey the claim under state law. Why doesn't it follow that the greater includes the lesser that if you could completely obey the claim with the death of a defendant, you could impose a two-month limitations period after the accrual of the cause of action? You know, Judge, I think a couple of reasons. I think one place to look is crabs. I think that what defendants are asking is for these estate presentment statutes to behave like statutes of limitations and that's the same thing that these same parties did in Jackson and similar parties in crabs. In Jackson, the city was asking for the court to treat the survivorship law like a statute of limitations and I think that's what's important. Well, so I hear you that that could be a problem if a state did it in a way that looks like they're discriminating against 1983 actions and undermining federal law. But if what they're doing is applying something in a generally applicable way to all causes of action, that does seem different. I mean, I just want to make sure I'm understanding your response. Is your key response that this kind of application of state law would discriminate against 1983 actions? Is that your point? Or maybe I'm not getting your point. No, Judge, I don't think the analysis reaches discrimination. I think that under crabs and Jackson, when a statute behaves like a statute of limitations, when defendants are asking it to do so, it conflicts with the purpose of 1983. 1983 claims must be treated in a uniform fashion such that they have two-year statutes of  However, I understand that there's a federal rule that means they always have to have a two-year limitations period. No, I believe that that is what that's the proposition that crabs set forth and that Jackson affirmed that these claims should be that 1983 claims should be treated uniformly and have a two-year statute. However, I understand that, you know, and Ohio courts apply it this way. There is a state law public policy behind the statutes at issue here. They deal with the efficient administration of estates. And that's why in these statutes, there is a safe harbor provision in 2117.06g that provides that if a plaintiff like us is not seeking to recover from the assets of the estate, which we are not, the two-year statute of limitation applies anyway. So I think, yeah, but, but, but the, so, okay, so that's a distinct point. And the problem with that point is that it's not obvious that the estates would be eligible for reimbursement by the city. I mean, let's just say it's determined that they went off the reservation. They acted in bad faith, whatever the exception might be. In fact, now that I think about it, the statute doesn't even refer to the word estate. It's not even obvious it necessarily applies, but, but let's put that to the side. Isn't that a problem? No, Judge, I don't think that's a problem for us at this stage. And here's why. The statute itself, sure, that safe harbor provision provides that if you're, if you're looking somewhere else, if you plan to look somewhere else, then the estate presentment laws don't even apply to bar your claim because what they're about is a creditor seeking to recover funds, recover from the assets of the estate. If you're outside of that, then it doesn't matter. It doesn't even affect the policy behind the law. And so here we're in a posture where we need to get to a jury and get to a judgment. And at that stage, we'll be able to figure out being able to collect, at that stage, we'll become akin to a predator where we'll be talking about collecting on that judgment and there are multiple ways we can do it. You know, the fiduciary of the estates, if we prevail, could assign the claims. They could go and get the funds under the indemnity statute themselves. There could be joined in several liability with the city, or at the very least, we could obtain a judgment based upon which there's a finding of individual liability, allowing us to prevail on a Monell claim. And then we're just recovering from the city. But the point is, under the estate presentment framework, there is no, and the way Ohio courts have, the Ohio Supreme Court has interpreted it in Meinberg and in the estate of George, there's no bar to getting to that place. What this statute... Can I ask you a practical question and tell me if I'm missing something? And you're free to use this as a prompt to turn to this part of the argument, but let's say you're right about the claim, the Monell claim. Does that lower the stakes of this first argument? I think that if we're correct about the Monell claim, I think that we are, we need to be allowed to get there. So if the stakes of the estate presentment argument is, as the district court erroneously decided, that this is a capacity statute and we can't even get in the door, then the stakes are very high. I don't think it is a capacity statute. I don't think it bars suit. I don't think it creates immunity from liability. What's the difference in damages? I mean, in other words, possibility number one is all you can do is sue individual officers in their estates. Possibility number two is you can only sue the city and you have a viable Monell claim. Is it really a big difference in damages? I think as a practical matter, Judge, maybe not. I think the point at this stage is that we need to be able to get there and figure out how the parties are going to go about collecting on the judgment. I will say that even if a liability finding against individual officers isn't necessary for the Monell claims, as long as we can show that there was an individual responsible, it is important to my client to be able to obtain that judgment. And I think at this stage, there's nothing in Ohio law. In fact, the text of the statute and the Ohio Supreme Court's interpretation of the estate presentment statute that should bar us now from being able to get to a jury and get to liability and figure out how collection is going to occur later. I'd like to ask you about the Brady violation or alleged violation, if you don't mind, since we don't have much time left. So it seems like the city is arguing that there really was no there were no materials that were not disclosed to Andrews. How do you respond to that? And also, I'm wondering, when the state court granted a new trial, was it based upon the materials that you're now claiming were not disclosed? Thank you, Judge. So two things right now on appeal, the universe of Brady evidence that we contend a jury could decide was not disclosed from the police to the prosecutor. It's a relatively small universe. There are two things. One, there are the murder victim here, Isaiah's wife, is found wrapped in bloody sheets from the Howard Johnson Motel, they say on their Howard Johnson Motel. These homicide detectives, you know, knew about these sheets. They went to the Howard Johnson Motel. They investigated at the motel. They found that the alternate suspect, Willie Watts, was living there and had cleared his room, you know, stripped these sheets out of his room. So you have the bloody sheets, you know, feet away from Willie Watts's house around the murder victim's body and his room stripped of these sheets. They memorialize that in a report. And that report and that information is the key piece of Brady material that they withheld. Now, that is a narrow item that's on appeal. Can I just pause there? I mean, they did get the point is they gave this page three, but it's allowed illegible. How does it work? I mean, I mean, you could turn over 500 pages and it turns out an important one is illegible. Isn't there some obligation on the claimant to say, wait a second, I can't read page three. I mean, how does it prove anyone's intentionally done anything? You know, Judge, I don't think we need to prove that they've intentionally done something. What I think we need to show is that the police did not produce this information to the prosecutor. And I think we can really important thing in this case is that defense and the district court relied upon what they're calling the archived file from the prosecutor's office. But that file is not a reliable representation of what was or was not in the prosecutor's hands at the time of trial. It has post-conviction materials. It was pulled in 2018, and no one can testify as to what got in there when. Now, what we have is testimony from now Judge Adrian, now Judge Gibson, Carmen Marino, the defense witness, and on the trial transcript, the prosecutor, Charlie Laurie, saying none of us were aware at any time of physical evidence tying this alternate suspect to the crime. And that's our evidence in support of this Brady violation and the nondisclosure element of the Brady violation. I'm sorry, I'm over time. If I could just follow up, the information you're talking about now, was that the basis for the new trial in the state court? What was the reason that Andrews got the new trial in state court? The state court found that there were Brady violations. This is a narrower subset of evidence than that. So the state court's focus was a little different. However, in this case, we also have the affidavit of then defense attorney Bill Summers confirming that this particular evidence was never in the defense's hands. Let me ask you one thing about the Monell claim. Is the viability of the Monell claim dependent on this policy, GPO 19-73? Without that city policy, would you still, is that the entire basis for the Monell claim? No, Judge. I think that is certainly a key basis because as this court has held in Jackson, a jury could decide that that confers Monell liability. However, at the motion for summary judgment stage and here on appeal, we are pursuing all four avenues of Monell liability. And I think there's more than sufficient evidence that a jury could determine that there was a failure to train, that these police officers were not sufficiently advised of their Brady violations by the city, as well as that there was a culture of police misconduct in ratification of the same. So I don't think that the claim depends solely on GPO 19-73. However, I do think that it's important, especially in light of the Jackson decision. All right. Judge Bush, did you get enough of an answer on your question about the relationship between the second trial and the Brady evidence? Just want to make sure. I think so. I mean, I guess the thing that I'm wondering is if, is there some sort of a, I don't know if it's race, it's not really race judicata, but it would seem like if the state court were granting relief for a new trial, that would be pretty good evidence for you in federal court that there was a Brady violation, if it's the same material you're talking about. You know, I think it's great evidence, Judge. I mean, what we have to consider here is that this man was exonerated. Once his defense team had this evidence, he was acquitted by a jury. He was retried and acquitted by a jury. And like you're saying, the state court found that there were Brady violations. Now, what the defense argues is that it's a different, you know, the proofs that are required in the 1983 setting are different because there's a requirement for us to show that it was police who failed to disclose. And we can do that with respect both to the physical evidence tying this alternate suspect, Willie Watts, to the murder, as well as with the other piece of Brady evidence that's here on appeal, which was a Cleveland Police Crime Lab report that a bloody handprint found on a newspaper where the body was found was not a match for Isaiah's. Well, we'll get your full rebuttals. So thanks for answering our questions. Why don't we hear from the other side? Then we'll return this bomb to you after they've gone. Good morning. Good morning. Thank you, Your Honor. You know, it's axiomatic in assessing a police officer's qualified immunity. Just remind us which group of defendants. I apologize, Your Honor. I'm for the two estates. The estate of Roble and Hubbard. My name is John Latchney. That the court must examine each individual officer's conduct in assessing whether they knowingly violated a clearly established constitutional right. In this particular case, there's no evidence that either Detective Hubbard or Detective Roble did that. The three theories that they present is that Hubbard or Roble failed to disclose the identity of an alternative suspect. The problem with that theory is that there are no less than four documents in the record where Willie Watts is identified as the suspect. It's page ID number 7114. It is our opinion that this crime was committed by Willie H. Watts, who is apparently attempting to sell his mother's coat and other valuables to get money to get away from the city. Hey, can I just pause you there? Sure. Isn't it a difference in kind if you know someone's a suspect versus you know that they were staying in a room where the sheets that wrapped up the victim's body were found and they were missing from the room? I mean, I don't think you end Brady claims because the defendant knew someone else was a suspect, right? Well, I mean, it's more than that, Your Honor. When they investigated Willie Watts, they determined that he had an alibi and that his alibi matched up. And in fact, during the retrial, the prosecutor, even then, took the same position that Watts was not a true suspect because he had an alibi. Didn't the time frame shift over the course of the case and Watts' alibi didn't cover the entire alleged potential time frame? That's true in part, Your Honor. And the issue is whether either detectives Hubbard or Rule were aware of the coroner's conclusion that the time frame had shifted. I think that there was a lot of cross-examination during the criminal trial. And I think the criminal defense attorney's primary theory of defense was the timing of Regina Andrews' death. The only officer who testified at trial was Detective Hubbard, and he was not asked any questions about the timing of her death. That information came through the county coroner because she was the one who determined the time of death. It should also be noted that Mr. Marino, and I think this is the key point, the police officers disclosed the identity of the alternative suspect, and I think there's absolutely no question of this, to the county prosecutor. The county prosecutor would have had an obligation to disclose any potentially exculpatory evidence to the criminal defense attorney. And I think that's the key distinction or point here. What's your theory as to what happened at page three? I believe it was simply an error in scanning the file, Your Honor, because the page was there. It was bait stamp page number 24, and the other three pages were bait stamp 30 through 32. And I think what happened was, and it was a few pages away from the entire report, but this is the so-called legible report, which you can read somewhat. But if you match it up with the other versions that were in the coroner's file the day after, on November 19, 1974, and was time stamped by the coroner, when you match up the other pages with the one that Carmen Reno had made his notations upon, then it's pretty clear that these are all the same report. And I think Judge Gwynne correctly made that determination, that the report that was difficult to read was identical in the same report as the other reports that are in the record. Yes, isn't there at least a material dispute as to how much or what information the officers provided to the prosecutors regarding Mr. Watts and his potential involvement in the homicide? In terms of the disclosure of the prosecutor, clearly Attorney Marino drew his own conclusion on page ID number 3800, I believe it is, in his deposition at page number 5253, he states that his conclusion was there were no valuables taken from the body or the decedent's room, which I think his conclusion was, is that their theory that this was a financially motivated crime by Watts was not consistent with the fact that no theft occurred. So, I think Marino was aware of Watts as a suspect and had, in his own mind, ruled him out because the motivation wasn't there. But clearly, the prosecutor knew about Watts as an alternative suspect. I think that's the real issue. And it was their duty to disclose him as an alternative suspect to the defense, because in 1974 and 1975, the police did not have a duty or obligation under Brady to directly disclose anything to the criminal defense. They would have to have a duty to disclose only to the prosecutor. And there's no indication in this record that they failed in that regard with respect to Mr. Watts. What's your take on the survivor statutes? The closest analogy I could find, Judge, was a Sixth Circuit opinion called Warner v. Perino from 1982. It was 585 F. 2nd, 171. In there, this court was looking at a similar issue where it had a claim under Section 1982, and the court had to decide whether to apply the six-month statute of limitations under the Fair Housing Law. And what the court did was it did, in fact, adopt the specific state statute or borrow from the specific state statute to determine the limitations period. I think in this particular case, if the court wanted to use the principle of, you know, the more specific statute applies over the more general statute, because, as you point out, Judge, the 21-1706 applies and 21-1737 apply in a non-discriminatory fashion, it would be appropriate for the court to adopt that two-month period for presentation of claims against the states, since they do not. But why isn't the more apt analogy or case Robertson, the U.S. Supreme Court decision, which says that state law can actually completely abate a claim in a survivor's case? If it can completely do that, why isn't a two-month period, you know, the lesser? No, I agree, Your Honor. You'd mentioned that the greater includes the lesser, and I believe that's true. We presented that argument, obviously, in our brief, and obviously we're not abandoning that argument. So I was just trying to add, I guess, something beyond what was contained in the briefs. So the simplified way of looking at this issue is whether state law, probated state law, can trump the federal policy in favor of application of Section 1983. If you weigh those two things, wouldn't Andrews have a, you know, an advantage here in terms of our analysis of the issue? I don't know that trump is the right word I would use. I guess the question is whether 21-1706 allows a sufficient window of time for a party who wants to bring a Section 1983 claim or any other claim against the estate, and does that comport with the federal policies underlying Section 1983? But I don't know that it necessarily, because if it doesn't, if it had completely foreclosed a claim against the state, I think we would have a different analysis. But it does allow a two-month window for the presentation of the claim against the state. And I think the issue here is more the sufficiency of that two-month window. Of course, a federal policy would favor the two-year statute of limitations, personal injury statute of limitations. There's a big difference between two months and two years. Well, and that's why I brought up the example from Section 1982 because that was a six-month statute of limitations where the court borrowed from the state statute. And the court found that the six-month statute, which is relatively short also, did not offend federal principles. So I don't know that, and again, I guess it's a question of is it enough? Is the two-month window enough? But again, I'm trying, I thought Robertson makes it, you don't need a window at all. The state will abate the claim entirely. Okay, yes, I agree, Your Honor. I was just trying to address Judge Clay's specific question. I'm not, again, I'm just trying to, I'm not giving an answer. I'm actually just, it really is a question. Why would you get into the two months, six months, two years, one year if you have a Supreme Court case that says you can have a survivor's statute as long as it's applied neutrally? The real problem is discriminating against federal causes of action. But if you just, you know, there's a competing policy here, which is the estate's been settled and, you know, that's quite a surprise to heirs or whoever's got the estate to suddenly realize this liability. I mean, one can understand why one has that rule. Yes, Your Honor. I mean, Mr. Hubbard died in 2009, and Mr. Roll died in 2015. And the policy underlying the estates to prevent them from basically being presented with stale claims, the House Supreme Court has interpreted that in a strict fashion. But again, it's not, it's not, it's not that strict. If you were a statute of repose of five years, for example, it would have ended either way. This has the, looks like a statute of limitation with a discovery rule, accrual rule. All that's going on is the discovery accrual rule is what's short, right? I mean, yes, you could very easily say we ought to have a repose law here at a certain point within a state. Why don't we hear from the city? And thank you. Thank you. Good morning, Your Honors, Bill Manzalora, City of Cleveland Law Department. Since I have a short amount of time today, I am going to focus on- Focus on Jackson, focus on why our hands aren't tied by the Jackson decision. Yes, that's exactly what I'm going to do. I'm going to focus on the first theory and the third theory of Manal and leave everything else to the briefing. And I will briefly address Officers Tell and Turner, who the appellant testimony they rely on so much in making their arguments. The reason this case is different than the Jackson-Ajamu-Bridgeman case is we have a different record, which leads to a different issue, which leads to a different result. We, after the Jackson-Ajamu-Bridgeman case, we went back and looked through police files. You can imagine from 50 years ago, it's difficult trying to recreate the record. And that's where we found the detective manual, which was not before the trial court or this court, Jackson-Ajamu-Bridgeman. And also we found the training of all police officers in the City of Cleveland's Division of Police in 1974, the same year of the homicide, on Ohio's new rule of criminal procedure 16. Also, before this court, there was no scientific evidence at issue in Jackson-Ajamu-Bridgeman. In this case, obviously, we have the issue with the scientific evaluation of the body handprint. And that puts into play Manual of Rule 16-10, which requires the Scientific Investigation Unit to turn over all information regarding scientific testing to the prosecutor. And that applies to both officers and civilian members of the Scientific Investigation Unit. I draw your attention to Manual of Rule 16, subparagraph 8, which references the fact that those rules apply to both the officers and the individuals. And so regarding the missing page 3, the detective manual, you know, we have Rule 2.51 and Detective Manual Rule 4, which talks about all information shall be turned over to the prosecution. Manual of Rule 13, I'm not sure why that wasn't discussed or referenced in Jackson-Ajamu-Bridgeman, talks about the officer in charge of the homicide unit preparing the entire file for the prosecution. I see I'm running up shortly on time here. I briefly want to draw the court's attention to and ask the court to review the deposition testimonies from Tell and Turner in Jackson-Ajamu-Bridgeman. Neither officer was in the homicide unit. Officer Tell testified that he worked in one cold case for a few months in 1980, which was obviously five years after this incident. So they both testified they have no first-hand knowledge of the training given to homicide on the issue that all evidence was supposed to be turned over to the prosecutor. The prosecutor was made to make the Brady termination. So I'm going to give you a couple of a few pages. I would ask the court in reviewing this case to look at it. For Turner, I ask the court to look at page ID number 12-556, 12-604, 12-626, and 12-627. And for Officer Tell, I ask the court to look at 12-026, 12-037, 12-038, 12-082, 12-083, and 12-085. Thank you, counsel. We appreciate it. We'll hear from Ms. Bonham. Thank you, judges. Briefly, I'd like to respond on Brady, on Monell, and on the presentment statutes. With respect to Monell, counsel just argued and pointed the panel to items that were in the record in the Jackson decision. There's nothing here that distinguishes the policy that was at issue at the time from the policy in the Jackson decision. It's the same policy on its face. I will say that to me, there's a difference between the cases and that Jackson is clearly more egregious. I mean, it's truly a fabrication of evidence case. And I just don't think that can be taken seriously is what's going on here. This just looks like, at worst, a negligent situation. So for what it's worth, that does seem a difference to me. Judge, I think, and in terms of our state law claims, which I know we haven't addressed, certainly here, there was a reckless breach of duty by the police in their failure to investigate and manage this entire criminal investigation. But I do think that the claims here, that the Brady violations here are egregious. You know, the police, these two detectives were the lead detectives responsible in the city's own testimony, responsible for managing this file and completing this investigation and making the disclosures of Brady evidence. There was a murder victim's body that they knew about that was wrapped in the bloody sheets from a suspect that they knew about hotel room and buried near that suspect's mother's house. They had that guy and they let him go and they got Isaiah instead with no physical evidence tying him to the murder scene. And then they covered that up. Now, Mr. Latchney talked about investigative prosecutor Marino's testimony. Carmen Marino testified that he was never aware of any exculpatory evidence tying an alternate suspect to the murder scene, nor exculpatory evidence removing Isaiah using that handprint from the murder scene. Carmen Marino also testified explicitly that neither he nor Charlie Lorry nor any other prosecutor withheld exculpatory evidence in this case. So both of these things can't be true, that the defense are using Marino in support of their case, but the Marino saying, well, the prosecutor's office didn't make the nondisclosure. It had to have been the police at a minimum. That's something that the jury can decide. Similarly, we have, and again, the city's 30 v. 6 representative testified that there should be a report from the city of Cleveland crime lab that says we compared this bloody handprint found by the body to Isaiah Andrews. And the print was not a match. I mean, that's really serious. If you had that and showed it to a jury, in fact, that did happen. Once we got it and we showed it to a jury, the jury acquitted. So I think on these two pieces of evidence, there are extremely egregious brevity violations. And there were others, as you were saying, Judge Bush, there were others that are just not now on appeal that the courting granting a new trial also considered. Very briefly on the estate law issues, it's our position that the discriminatory nature or the specific nature of the estate presentment statute, which is not an abatement statute, does not matter to the analysis. If defendants are treating it like a statute of limitations, it conflicts with the purpose of Section 1983. However, the court doesn't need to get there. You couldn't have a statute of repose that just said, you know, we're just going to call no accrual. We're just going to say after 10 years, that's that. It's not right to have an estate have to come to grips with something 10 years after the fact. I think 10 years, Judge, we might be in a different situation. And I'm making the point. That's not that different here, right? Because one of them died in 09 and one in 15. Long before these claims were even discovered because of the actual suppressions done. That's the point. That is the point of a statute of repose. There is no discovery rule with statutes of repose, right? So I'm trying to make the analogy that it surely is something a state could do. That, hey, we're just going to say at some point, you can't come back after an estate with a new creditor. That has, there's finality reasons for that. So I'm just trying to make the point. Ohio hasn't done that. They've said, no, no, no, no, we're not going to do that. But what we are going to say is the accrual is a very tight timeline. And that's all that's happened. I guess if you can completely abate the greater includes the lesser, and if you can completely end it through a statute of repose, why not through a tight timeline on a statute of limitations? Okay, Judge, understood. So even if you can do that, even if the state can do that, and there are good policy reasons for doing that, it doesn't matter here because of the safe harbor provision in subdivision G. I understand that. We talked about that before. I understand your position on that. Yeah. And I just want to say on that point here, there's no dispute and the probate court held that the assets are dispensed with. There are no errors that are sitting around waiting. What we have is an agreed reopening of the estate for the purpose of litigation. The administrator is an attorney, you know, all parties did. This is not responding to anything they said. This is responding to something I asked you earlier. So I think, I think we're good. I think we're good. Thanks to all three of you for answering our questions. I can't remember whom we're accommodating by doing this by Zoom, but thanks to the others for accommodating that person. And the case will be submitted.